UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| JUSTIN CASTELINO, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Cause No. 2:17-cv-139-WTL-MJD |
|  | ) |  |
| ROSE-HULMAN INSTITUTE OF TECHNOLOGY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ENTRY ON MOTION TO RECONSIDER

This cause is before the Court on the Plaintiff's motion to reconsider (Dkt. No. 91). The motion is fully briefed and the Court, being duly advised, **DENIES** the motion for the reasons set forth below.

As an initial matter, the Plaintiff either misunderstands or purposefully mischaracterizes the relief he sought in his previous motion. In the instant motion, the Plaintiff "moves this court, under and pursuant to F.R.Civ.P. 59(e) for reconsideration of the Entry of August 16, 2017, Docket No. 88, on Plaintiff's Motions to disqualify the magistrate and *terminate Defendant's deposition of Plaintiff* to prevent manifest injustice . . . ." Dkt. No 91 at 1 (emphasis added). The Court has not ruled on any motion to terminate the Plaintiff's deposition and therefore cannot reconsider any such ruling. Whether the Plaintiff's deposition should be terminated is the subject of a still pending motion which, like the other non-dispositive motions in this case, has been referred to Magistrate Judge Dinsmore for ruling.[1] In addition to the motion to disqualify,

---

[1]Given this fact, it is not clear why the Plaintiff goes on at great length about the circumstances of his deposition in his brief in support of the instant motion. Again, the issue of whether the Plaintiff's deposition should be reopened or terminated is the subject of a separate

the Entry the Plaintiff now asks the Court to reconsider (which is found at Docket No. 88) resolved the Plaintiff's objection to Magistrate Judge Dinsmore's Order Rescheduling Preliminary Injunction Hearing (which is found at Dkt. No. 70).[2]  Those are the only rulings that the Court has made, and therefore the only rulings the Court could reconsider.

The Plaintiff inexplicably begins the argument portion of his brief with the following:

> To address a clear error of law, we would remind the Court that the "Eggshell Skull" rule applies to more that [sic] actual head injuries. It applies whenever a defendant is surprised by the extent of the damage its actions caused. "If a tortfeasor inflicts a graver loss on his victim than one would have expected because the victim had some pre-existing vulnerability, that is the tortfeasor's bad luck; you take your victim as you find him. That is the famous "eggshell skull" rule of tort law, illustrated by our decision in Stoleson v. United States, 708 F.2d 1217 (7th Cir.1983)" Schmude V. [sic] Tricam Industries, Inc., 556 F.3d 624 (7th Cir. 2009).
>
> The cited Stoleson case involved a suit to recover for hypochondria induced by the Government's failure to protect the plaintiff from over-exposure to glycerine; the Court of Appeals cited Prosser, Handbook of the Law of Torts 261 (4th ed. 1971)) as authority for applying the Rule against the Government. As in this case, Stoleson did not involve a head injury or any physical injury directly caused by a rude, angry or violent touching. It involved a preexisting susceptibility.
>
> Justin had a pre-existing susceptibility. It was documented. See Exh. 1, 2 attached to Plaintiff's Brief in Support of Preliminary Injunctive Relief, filed on July 10, 2017, as Docket No. 56. The Eggshell Skull Rule applies to this case, especially since the Defendant's actions or inactions in denying Justin his accommodations caused him greater injury than a normal student would expect. That is precisely why they had to accommodate him.

Dkt. No. 92 at 2-3.  There is nothing in the Court's previous ruling that remotely suggests that the Court believed the eggshell skull rule to be limited to "actual head injuries."  Rather, what

---

motion and is not before the Court at this time.  The Plaintiff cannot object to a ruling the magistrate judge has not made.  The same is true of the other pending discovery motions.

[2]The Plaintiff expressly "object[ed] to the Magistrate Judge's Order of July 27, 2017 and specifically, to the part of that Order that set Plaintiff's Preliminary Injunction Hearing back from August 23, 2017 to November 2, 2017 . . . ." Dkt. No. 86.

2

the Court said was the following: "That doctrine relates to the proper determination of the proximate cause of injuries to a person with a preexisting condition and the proper calculation of damages in such cases; it has no application to the conduct of a deposition by counsel." Dkt. No. 88 at 7. That remains the case, and the Plaintiff has made no cogent argument to the contrary.

The Plaintiff correctly notes that the Court referred to the basis for his original arguments as "a bit murky" and states that this "suggest[s] strongly the possibility that the Court did not understand us properly." Dkt. No. 92 at 1. However, the Plaintiff then proceeds to simply reiterate the arguments he made in his original brief. Inasmuch as these arguments were fully addressed in the Court's previous ruling, it is abundantly clear that the Court did not misunderstand the Plaintiff; rather, the Court simply found the arguments to be without merit. The Court still does.

The Plaintiff argues that "[a]s evidence of impermissible partiality, we offer[ed] the several occasions when Magistrate Dinsmore has favored the Defendant by disregarding the Federal Rules of Procedure." Dkt. No. 92 at 3. The Court examined each of these alleged violations of the rules in its original Entry and explained at length why each was not, in fact, a violation, concluding that "Magistrate Judge Dinsmore has not disregarded either applicable prior case law or the applicable rules." The Court stands by its prior ruling. The Plaintiff apparently continues to believe that the fact that Magistrate Judge Dinsmore has addressed discovery matters and deadlines in this case by means of informal status conferences rather than formal motion practice is somehow improper. The Court reiterates that, for the reasons explained at length in its previous Entry, that belief is simply incorrect. Magistrate Judge Dinsmore has addressed the issues that have arisen in this case in the same manner as all of the magistrate judges in this district address issues in every case. As explained in the Court's prior

ruling, and wholly ignored by the Plaintiff, using informal conferences to discuss and attempt to reach consensus regarding discovery issues and deadlines is contemplated both by the Federal Rules of Civil Procedure and the Court's uniform case management plan. Indeed, it is a necessary component of the administration of justice, especially in this district, which has one of the highest weighted caseloads per judicial officer in the nation. The Plaintiff's continued insistence that the fact that Magistrate Judge Dinsmore did not require a formal motion for every extended deadline somehow indicates a lack of impartiality is frivolous and suggests a real or feigned misunderstanding of the applicable rules by Plaintiff's counsel.

The Court further reiterates that the real source of the Plaintiff's consternation is the granting of an **agreed motion**—specifically Magistrate Judge Dinsmore's order, found at Docket No. 42, that the Defendant's discovery was to be due on July 14, 2017, or seven days following the Plaintiff's deposition, whichever was later. The Plaintiff did not file an objection to that order and by his silence acquiesced in defense counsel's statement in the motion that she "ha[d] spoken with Mr. Castelino's counsel, and he does not object to this motion."[3] Dkt. No. 40 at 2. The Plaintiff still does not acknowledge, let alone refute, this statement. A judicial officer is

---

[3]The Plaintiff's statement in his brief that the motion in question (Rose-Hulman's Agreed Motion for Enlargement of Time to Respond to Discovery, Dkt. No. 40) "recited only that Plaintiff had agreed to allow Defendant 'until July' for production without mention of Justin's deposition," Dkt. No. 92 at 7, is simply false, as is his statement that "I did not agree to the Order Magistrate Dinsmore issued, and he knew it." *Id.* There is simply nothing before the Court that indicates that Magistrate Judge Dinsmore had any reason to question defense counsel's representation that the motion was agreed. If it was not agreed, or if defense counsel misunderstood the extent to which it was agreed, the reasonable and rational response would have been for the Plaintiff to bring that fact to Magistrate Judge Dinsmore's attention *at the time*. The Plaintiff did not do so. Nor did the Plaintiff make that representation to the Court in its original motion to disqualify, as the Court noted in its ruling. *See* Dkt. No. 88 at 3 ("The motion is referred to as 'agreed' in its title, and paragraph 7 of the motion states: 'The undersigned has spoken with [Plaintiff's] counsel, and he does not object to this motion.' Dkt. No. 40. The Plaintiff does not dispute this representation. It is difficult, to say the least, to understand how the granting of an *agreed* motion could ever constitute bias by a judicial officer.").

entitled to rely on such representations by counsel; that reliance, in the absence of any contrary information from the Plaintiff, cannot possibly serve as evidence of any bias on the part of Magistrate Judge Dinsmore.

The Court's original ruling fully explained its reasons for overruling the Plaintiff's objection to Magistrate Judge Dinsmore's order continuing the preliminary injunction hearing, and nothing in the Plaintiff's motion to reconsider merits any additional discussion on that issue.

What does merit additional discussion are statements made by Plaintiff's counsel in his reply brief. Plaintiff's counsel, John Thrasher, characterizes defense counsel's ability "to predict the outcome of our choosing to limit her deposition with surprising, or suspicious, accuracy, when compared to the Magistrate Judge's latest Order, Docket No. 70." Dkt. No. 98 at 3. Mr. Thrasher continues:

> When the Magistrate warned me that processing our Motion to Terminate or Limit Justin's deposition would necessarily require that the hearing date be set back, he at once presented a false fork and repeated almost exactly what [defense counsel] predicted at the deposition, Tr. Vol 1 page 236 lines 3-13. This gives the appearance of ex parte communication between them in violation of Canon 3(A)(4) of the Rules of Conduct for federal judges; it is a judge's duty to avoid even the appearance of impropriety. Canon 2. These Canons are two more rules the Magistrate Judge seems to disregard.

*Id.* at 3-4. Far from suggesting an ex parte communication, the "prediction" made by defense counsel echoed exactly statements that were made by Magistrate Judge Dinsmore *on the record* during a discovery conference on June 13, 2017. At that conference, Magistrate Judge Dinsmore stated that it was his recollection that the parties had agreed during a previous status conference, held just a few days earlier on June 8th, that the Plaintiff's deposition would be taken on June 15th. Mr. Thrasher had reneged on that agreement because, in his words, he "realized that Rose-Hulman had not provided what I needed to prepare for the deposition"; namely, its responses to his discovery requests. Magistrate Judge Dinsmore noted that that had been discussed during

5

the June 8th conference and Mr. Thrasher had not objected to the Defendant's responses being provided in early July, which was obviously after June 15th. Mr. Thrasher responded that he understood the issue during the June 8th conference to be whether he needed the discovery to prepare his brief in support of his motion for preliminary injunction, which he did not, but that he had since realized he needed the discovery to defend his client's deposition. Magistrate Judge Dinsmore rejected this argument, stating that the Plaintiff needed only to answer questions truthfully at the deposition and no discovery was needed for that. He also noted that the Defendant had requested the deposition well before the Plaintiff had served his discovery requests and had actively tried to schedule it since requesting it, and that the Defendant therefore was entitled to take the deposition before it responded to the requests. He then stated that if the deposition did not proceed on June 15th, "the chances that Judge Lawrence, I mean, that will absolutely shoot any possibility that this thing can be briefed, let alone decided, before the first of September, you understand that?"[4]

The allegedly "suspicious" statement by defense counsel during the deposition is as follows:

> But—but what I'm saying is that if—you know, we're quitting early today. We've taken lots of breaks. If we don't get done tomorrow, I just don't want anyone to object later that we're going to have to push back the briefing schedule and possibly the August hearing on your preliminary injunction motion, which could cause problems with a September start date for the fall quarter.

Castelino Dep. Vol. 1, p. 236 (quoted in Dkt. No. 98 at 3). When she made this statement, defense counsel was simply repeating Magistrate Judge Dinsmore's admonition, quoted above. There is nothing "surprising" or "suspicious" about that. It was not a "prediction" of what

---

[4]This was based on the fact that defense counsel had a vacation planned in June and the Plaintiff had represented that he would be unavailable during the entire month of July due to international travel.

6

Magistrate Judge Dinsmore *would* say; it was a recollection of what Magistrate Judge Dinsmore *had already said*.

By making this baseless accusation of misconduct against Magistrate Judge Dinsmore and defense counsel, Mr. Thrasher has come perilously close to crossing the line from vigorous (if misguided) advocacy to sanctionable conduct. *See, e.g.,* Indiana Rule of Professional Conduct 8.2 (prohibiting statements regarding the integrity of a judge that are false or made with reckless disregard as to their truth or falsity); Seventh Circuit Standards of Professional Conduct ¶ 4 (An attorney will not "absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety."). Mr. Thrasher is directed to review the Indiana Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct, both of which govern the conduct of attorneys appearing before this Court, *see* Local Rule 83-5, and insure that he fully complies with those rules and standards in all future filings, communications, and actions during the course of this case.

SO ORDERED: 9/8/17

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification