UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JUSTIN CASTELINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:17-cv-139-WTL-MJD |
| | ) |
| ROSE-HULMAN INSTITUTE OF TECHNOLOGY, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REGARDING MOTION TO DISQUALIFY COUNSEL

This cause is before the Court on the Plaintiff's motion seeking to disqualify defense counsel (Dkt. No. 109). The motion is fully briefed and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court **GRANTS** the Plaintiff's unopposed Motion Under Local Rule 6-1(b)(1)(B)[1] to Accept as Timely (Dkt. No. 127).

## BACKGROUND

In his motion, Plaintiff Justin Castelino seeks to disqualify attorney Holly Reedy and her law firm, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy ("Wilkinson Goeller"), from

---

[1]There is no Local Rule 6-1(b)(1)(b) in this district. Presumably Castelino meant to refer to Federal Rule of Civil Procedure 6(b)(1)(B), which is applicable to situations such as this in which an extension of a deadline is sought after the deadline has passed. In light of the fact that the Defendant has not objected to this motion, the Court summarily grants it. *See* Local Rule 7-1(c)(4) ("The court may summarily rule on a motion if an opposing party does not file a response within the deadline.") However, the Court notes that in the future counsel should file any such motion prior to the expiration of the applicable deadline. The Court further notes that the applicable deadline in this instance was October 11th, not October 12th as asserted by Castelino, as the time to reply runs from the date of *service* of the response, not the date of its "receipt"—which Plaintiff's counsel inexplicably seems to define as the date he downloaded the response—and that a motion for more time should be filed separately from a motion for additional pages. *See* Local Rule 7-1(a) ("Motions must be filed separately.").

representing Defendant Rose-Hulman Institute of Technology ("Rose-Hulman") in this case because one of her partners represented Castelino in another matter. The timeline of relevant facts are as follow:

- In May 2015, Castelino, a student at Rose-Hulman, was suspended by Rose-Hulman for one quarter for academic misconduct.

- On May 20, 2015, Castelino's landlord for his off-campus apartment in Terre Haute filed suit against Castelino and his mother seeking to evict Castelino and recover for alleged damage to the apartment. The landlord's complaint alleged as grounds for eviction: "smoking (illegal or other)" in the apartment; an additional person living in the apartment for more than four days; domestic violence; "other residents in area are threatened by [Castelino's] violence [and] police were called"; damage to the apartment; tampering with the electrical box; and verbal assaults and threats to others living nearby and the management team.

- On June 22, 2015, Castelino, through attorney Andrea Ciobanu, filed a discrimination complaint against Rose-Hulman with the Indiana Civil Rights Commission ("ICRC"), alleging that Rose-Hulman engaged in unspecified retaliation and had failed to accommodate his disabilities, which he described as "ADHD and Auditory Processing Disorder, which inhibits my ability to process verbal instructions and requires additional time to complete assignments."

- The docket from the eviction suit indicates that on June 29, 2015, a hearing was held, the landlord was to take possession of the apartment by July 15, 2015, and a hearing as to damages was to be held on December 16, 2015.

- On July 22, 2015, David Friedrich, a partner in Wilkinson Goeller, entered his appearance on behalf of Castelino and his mother in the eviction suit.

- On July 28, 2015, Reedy, who is also a partner in Wilkinson Goeller, filed Rose-Hulman's response to Castelino's ICRC complaint. The response denied that Rose-Hulman had failed to accommodate Castelino and explained the findings of academic misconduct that had led to Castelino's suspension, which Rose-Hulman assumed was the alleged retaliation referenced in the complaint.

- The docket in the eviction suit indicates that the landlord's counsel reported to the court on December 16, 2015, that the case had settled.

- On February 19, 2016, Friedrich requested via email to Castelino's mother that she and Castelino sign and return a settlement agreement relating to the eviction suit. Castelino executed the document on February 28, 2016.

- On March 30, 2016, the eviction suit was dismissed upon the filing of a stipulation of dismissal.

- On June 10, 2016, Rose-Hulman conducted a hearing regarding Castelino's second application for readmission after his suspension. Reedy attended the hearing as Rose-Hulman's legal counsel. Rose-Hulman declined to readmit Castelino.

- On or about June 13, 2016, Friedrich sent a bill to Castelino's mother noting a balance that had been due for 61-90 days.

- On July 18, 2016, Ciobanu filed a complaint with the United States Department of Education Office for Civil Rights ("OCR"), alleging that Rose-Hulman had retaliated against Castelino for filing a complaint with the state agency by denying him

- readmission. By letter dated July 29, 2016, the OCR notified Rose-Hulman that it was opening an investigation into Castelino's complaint.

- Reedy filed a response with the OCR. In that response, she set forth the alleged reasons Rose-Hulman decided not to readmit Castelino after his suspension for academic misconduct, including the fact that two months after his suspension he was arrested in Connecticut and charged with a variety of drug-related crimes and the fact that Rose-Hulman faculty had reported numerous instances of Castelino behaving in an aggressive, disrespectful, and disruptive manner toward faculty and students. Reedy also noted that Rose-Hulman had learned that Castelino had a criminal record prior to attending Rose-Hulman.

- On December 13, 2016, Ciobanu "discovered Wilkinson Goeller's role in [Castelino's] eviction proceeding and addressed an ethics complaint to Ms. Reedy by email." Dkt. No. 114 at 3. That same day, Ciobanu sent an email to Castelino with the subject line "Please advise: Filing ethics complaint re: Holly Reedy." Dkt. No 111-1.

- This case was filed on March 28, 2017. Reedy filed her appearance on behalf of Rose-Hulman on April 12, 2017.

- On May 4, 2017, Rose-Hulman filed its answer in this case, in which it asserts in one of its affirmative defenses that it is not required to permit Castelino to return to the school because Castelino "is a direct threat to the Rose-Hulman campus community and poses a threat to the safety of the members of the campus community." Dkt. No. 23 at 24.

- Also on May 4, 2017, Plaintiff's counsel in this case, John Thrasher, raised in an email to Reedy the issue of a conflict of interest based on Friedrich's representation of Castelino in the eviction suit. In her reply, Reedy explained her position that there was no conflict

because Castelino was a former client of Friedrich and the subject matter of the two cases did not overlap. She stated that when she learned of the issue late the previous year, she had sought guidance from the Indiana Disciplinary Commission, which had referred her to two attorneys, both of whom had opined that there was no conflict.

- On July 7-8, 2017, Reedy deposed Castelino. During the deposition, Reedy questioned Castelino about the fact that, while he was a student at Rose-Hulman, he had been banned from a fraternity house. The fraternity told Castelino he was banned because he had been involved in a physical altercation with a guest after he was asked to leave a party at the fraternity house. Castelino denied that a physical altercation occurred. Reedy also asked Castelino about his marijuana use while he was a student at Rose-Hulman and whether he, his girlfriend, or anyone else grew marijuana in his apartment in Terre Haute.

## **RELEVANT ETHICS RULES**

Several of the Indiana Rules of Professional Conduct are relevant to the issues before the Court.[2] Rule 1.7 provides, in relevant part:

[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Rule 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

---

[2]Pursuant to this district's Local Rule 83-5(e), the Indiana Rules of Professional Conduct govern the conduct of attorneys appearing before the Court.

The Seventh Circuit recently set forth the analysis applicable to applying Rule 1.9(a):

> In interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary. The commentary to Rule 1.9 defines two matters as "substantially related" when two matters "involve the same transaction or legal dispute," or when there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ind. R. Prof'l Conduct 1.9, cmt. 3.
>
> Whether two matters "involve the same transaction" is determined by an inquiry into whether the matters are factually related. Comment 2 states: "The scope of a 'matter' for purposes of this Rule depends on the facts of a particular situation or transaction." It is the direct involvement "in a specific transaction," that makes "subsequent representation of other clients with materially adverse interests in that transaction clearly . . . prohibited." *Id.*, cmt. 2.
>
> If the prior and present matters do not involve the same transaction or legal dispute, they may still be substantially related if there is a substantial risk that confidential information would materially advance the client's position in the present matter. The commentary tells us that information "disclosed to the public or to other parties adverse to the former client ordinary [sic] will not be disqualifying. . . ." *Id.*, cmt. 3.

*Watkins v. Trans Union, LLC*, 869 F.3d 514, 519-20 (7th Cir. 2017) (some internal quotation marks and citations omitted).

Finally, Rule 1.10 provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [or] 1.9."

## **DISCUSSION**

A motion to disqualify counsel often raises competing interests:

> We have observed that granting a motion for disqualification has "immediate, severe, and often irreparable . . . consequences" for the party and disqualified attorney. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 719 (1982). Disqualifying a lawyer immediately deprives the losing party from the "representation of his choice" and disrupts the litigation. *Id.* In sum, "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except

6

when absolutely necessary . . . [because it] destroy[s] a relationship by depriving a party of representation of their own choosing." *Id.* at 721.

However, the duty of confidentiality represented in the Rules of Professional Conduct, like the Code of Professional Responsibility that came before them, is fundamental to the profession and the relationship between lawyer and client. See *id.* Courts have a duty to safeguard the privacy of the attorney-client relationship and in doing so to "maintain public confidence in the legal profession" and to protect "the integrity of the judicial proceeding." *Id.*

*Watkins*, 869 F.3d at 519. The Court has considered these competing interests in resolving the instant motion.

Rose-Hulman argues that Castelino's motion should be denied because Castelino did not file it in a timely manner. The court agrees. "'A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.'" *Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994) (quoting *Central Milk Producers Coop. v. Sentry Food Stores,* 573 F.2d 988, 992 (8th Cir. 1978)). Failure to do so can lead to waiver of the issue. *See id.*

> Waiver is a valid basis for the denial of a motion to disqualify; a former client who is entitled to object to an attorney's representation of an adverse party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right. *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983) (citing *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir.1978); *Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir. 1975)); *[s]ee also Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 731 (11th Cir. 1988) ("waiver is appropriate 'where the former client, having every opportunity to do so, fails to object to a new relationship involving [its] former attorney'") (citation omitted).

> Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive. *Employers Insurance of Wausau v. Albert D. Seeno Construction Co.,* 692 F. Supp. 1150, 1165 (N.D. Cal. 1988). A court should also consider such factors as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party. *Id.; Commonwealth Insurance Co. v. Graphix Hot Line, Inc.,* 808 F. Supp. 1200, 1208 (E.D. Pa. 1992); *Alexander v. Primerica Holdings, Inc.,* 822 F. Supp. 1099, 1115 (D.N.J. 1993).

7

*Chem. Waste Mgmt., Inc. v. Sims*, 875 F. Supp. 501, 504-05 (N.D. Ill. 1995).

In this case, Castelino's own exhibits establish that Castelino knew of Reedy's potential conflict of interest on December 13, 2016, when Ciobanu emailed him about it.[3] That was several months before this case was filed. Therefore, Castelino was obligated to file a motion to disqualify Reedy with "reasonable promptness" after Reedy filed her appearance in this case. He did not; instead, he waited more than five months. The fact that he, first through Ciobanu and then through his current attorney, raised the possibility of a conflict with Reedy was not sufficient, as Reedy and her client were entitled to assume from the fact that it was raised and then not pursued with the Court that Castelino was satisfied with Reedy's explanation of why no conflict existed.[4]

All of the other relevant factors weigh in favor of denying Castelino's motion as untimely. Castelino has been represented by counsel at all times. Disqualification of Reedy would be particularly prejudicial to Rose-Hulman, given the fact that she has been serving as its counsel with regard to Castelino's suspension and ultimate denial of readmission since the very beginning, as well as the fact that this case has been vigorously litigated since very early on, as Castelino sought a preliminary injunction and discovery related to that motion commenced very

---

[3] Even if Ciobanu had not informed Castelino of the potential conflict, Ciobanu, his attorney at the time, knew about it, and as "'an attorney is the agent of her client,' the former's knowledge 'is imputed to her principal.'" *Smego v. Payne*, 854 F.3d 387, 396 (7th Cir. 2017) (quoting *Washington v. Parkinson*, 737 F.3d 470, 473 (7th Cir. 2013) (citation omitted)).

[4] Plaintiff's counsel asserts that he raised the issue with Magistrate Judge Dinsmore during the initial pretrial conference in this case on May 8, 2017, and that Magistrate Judge Dinsmore "decided that Wilkinson Goeller handled these matters through separate attorneys and that there was no conflict." Dkt. No. 114 at 6. The Court assumes that by using the word "decided," Castelino is not asserting that he orally moved to disqualify Reedy and the Magistrate Judge denied that motion; if that had occurred, Castelino would have waived his right to object to that ruling by failing to do so within fourteen days. *See* Federal Rule of Civil Procedure 72.

quickly and has generated extensive motion practice. Finally, Castelino's explanation for why the motion was delayed is confusing at best. He argues that he did not know of the substantial relationship between this case and his eviction suit until Reedy asked him certain questions during his deposition, but his motion is also based on his assertion (discussed below) that he remains a client of Wilkinson Goeller and therefore disqualification is appropriate under Rule 1.7, which applies to concurrent representation. No substantial relationship is required under Rule 1.7, and Castelino does not explain why he did not raise that issue—which he now asserts quite forcefully—within a reasonable time after Reedy appeared in this case.

The Court finds Castelino's delay in filing his motion to disqualify is sufficient reason to deny the motion. Even if it were not, however, for the reasons set forth below, the Court also would deny the motion on its merits.

First, with regard to Rule 1.7, Castelino argues that he is still a client of Friedrich, a partner in Wilkinson Goeller, and therefore the firm is concurrently representing him and representing Rose-Hulman against him in this case. However, the facts of record clearly indicate that the matter in which Friedrich represented Castelino and his mother was settled and dismissed on March 30, 2016, almost a full year before this case was filed. Castelino notes that Friedrich never sent Castelino a letter terminating his representation and argues:

> A law firm's failure to document the end of its relationship keeps it in the case. *Jenifer v. Fleming, Ingram & Floyd, P.C.*, 552 F. Supp.2d 1370 (S.D. Ga. 2008); *SWS Financial Fund A v. Salomon Bros., Inc.,*, 790 F. Supp. 1392 (N.D. Ill. 1992). The lack of a termination letter entitled [Castelino] to assume that Mr. Friedrich and his firm would remain his attorneys indefinitely. Therefore, [Castelino] is a current client of Mr. Friedrich's firm. *Jang v. Woo Lae Oak, Inc. Chicago*, 2013 WL 3270649 (N.D. Ill., June 27, 2013); *Mindscape, Inc. v. Media Depot, Inc.*, 973 F. Supp. 1130 (N.D. Cal. 1997).

Dkt. No. 125 at 7 (citations corrected by the Court). However, this argument is belied by the comment to Rule 1.3 of the Rules of Professional Conduct, which provides that "[i]f a lawyer's

9

employment is limited to a specific matter, the relationship terminates when the matter has been resolved." Further, none of the cases cited support Castelino's argument that a termination letter is required to terminate the attorney-client relationship once the matter for which the attorney was hired has been concluded. Rather, the first two cases involved situations in which the matter for which the attorney was hired had not been completed at the time the attorney claimed the relationship had been terminated. *Jenifer* was a legal malpractice case in which the defendant law firm argued that it did not have a continuing duty to the client after the lawyer who had been handling the client's case left the firm in the midst of the case and took the client's file with him. The Court noted that "an attorney's failure to document non-representation in writing, *coupled with the giving of some advice*, has given rise to a jury question on whether a relationship existed and thus, a duty owed to the client." *Jenifer*, 552 F. Supp.2d at 1377 (citation omitted and emphasis added). In *Mindscape, Inc.*, the court found that the attorney-client relationship continued because the patent matter for which the attorney was hired had not yet been completed. 973 F. Supp. at 1132. These cases are not applicable to the instant case, because the eviction matter for which Friedrich was hired was completed in March 2016.

On the other hand, in *SWS Financial Fund*, 790 F. Supp. at 1398, the Court applied the portion of the comment to Rule 1.3 of the Rules of Professional Conduct that provides:

> If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.

In that case, the law firm had an ongoing relationship with a client such that its attorneys answered the client's "commodity law questions as they arose." Therefore, the court found that

in the absence of some action by the firm or the client, the attorney-client relationship continued. That is clearly not the situation in this case.

The final case cited by Castelino on this issue, *Jang*, 2013 WL 3270649, is more factually analogous to this case. However, in that case the court distinguished *SWS Financial*, finding that the law firm's representation had ended when the particular work for which the firm had been hired was completed and no further action was taken. Thus, that case actually supports a finding that Rule 1.7 does not apply in this case.

Once the eviction matter was concluded, Castelino was no longer a client of Wilkinson Goeller. Accordingly, Rule 1.7 is inapplicable to the situation now before the Court. That said, the record also clearly indicates that Friedrich's representation of Castelino did overlap with Reedy's involvement as counsel to Rose-Hulman with regard to Castelino's suspension and complaint before the ICRC. That was a violation of Rule 1.7. It is not clear whether the violation occurred because the firm had inadequate conflict check procedures in place or whether human error thwarted those procedures. Either way, Reedy and her firm are directed to ensure that they have taken the steps necessary to prevent such conflicts from occurring in the future.

What is relevant now, however, is whether Reedy's current representation of Rose-Hulman in this case violates Rule 1.9, which applies to former clients. As set forth above, the relevant question under that rule is whether the current and prior matter are "substantially related." Two matters are substantially related when they "involve the same transaction or legal dispute." There is no question that the eviction case and the instant case do not involve the same transaction or legal dispute.

> If the prior and present matters do not involve the same transaction or legal dispute, they may still be substantially related if there is a substantial risk that confidential information would materially advance the client's position in the present matter. The commentary tells us that information "disclosed to the public

>or to other parties adverse to the former client ordinary [sic] will not be disqualifying. . . ."

*Watkins*, 869 F.3d at 520 (quoting Comment 3 to Rule 1.9). In light of the fact that the eviction suit involved whether Castelino's behavior in his apartment building and toward his neighbors constituted grounds for eviction and whether he was liable to the landlord for any damage to the apartment, that matter does not seem, on its face, to be substantially related to this case, which involves whether Rose-Hulman provided appropriate accommodations for Castelino's disabilities and whether its refusal to readmit Castelino after his suspension was retaliatory. However, Castelino argues that two lines of questioning by Reedy during his deposition demonstrate that the two matters are substantially related.

>First, Castelino argues:

>before Attorney Friedrich took his eviction case, [Castelino] explained all that was relevant to the landlord's complaint. He told Mr. Friedrich[5] that Rose-Hulman fraternity members, who did not reside in [Castelino's] apartment building, were harassing him in the building's common areas and becoming loud and disorderly, disturbing [Castelino's] peaceful use and enjoyment of his apartment. [Castelino] explained that the only threat he made was to tell those fraternity members that he would obtain a restraining order against them. He had consulted Rose-Hulman staff by email about harassment issues and the staff told him, by e-mail, that they couldn't force anyone to come and discuss off-campus problems even though Rose-Hulman's student handbook provides a remedy for on and off campus behaviors that involve harassment.

---

[5]The Court notes that Friedrich denies ever talking with Castelino and avers that he obtained all information relevant to the eviction suit from Castelino's mother. *See* Dkt. 132-1. He also avers that he was not aware of the restraining order threat. Perhaps Castelino is confusing Friedrich with another attorney, perhaps Castelino's or Friedrich's memory is faulty, or perhaps one of them is being untruthful. For purposes of this ruling, the Court will assume that Castelino's version of events—*i.e.*, that he reported the facts in question to Friedrich—is accurate. The Court also notes that Rose-Hulman's argument in its surreply that information provided to Friedrich by Castelino's mother on Castelino's behalf cannot be privileged is without merit, because the two were co-defendants in the eviction suit and both were represented by Friedrich.

Dkt. No. 125 at 13. But (at least in the excerpts provided by Castelino) Reedy did not ask Castelino about any such incident in his apartment building. Rather, she asked him about a particular incident at a fraternity house and other incidents on campus.[6] And to the extent that Castelino simply told Friedrich that he threatened others that he would obtain a restraining order against them, that is not "confidential information," because it involves something that Castelino said to third parties.

Castelino also points to questions Reedy asked him about whether he, his girlfriend, or anyone else grew marijuana in his apartment in Terre Haute. There is nothing in the record to suggest that the eviction suit involved allegations of growing marijuana; the complaint in that case mentions illegal "smoking," which could refer to marijuana, but nothing about growing. However, Castelino's arrest shortly after his suspension did involve growing marijuana, and that arrest was one of the reasons given by Rose-Hulman for not readmitting Castelino. It is therefore not surprising that Reedy asked Castelino about that topic during his deposition, and the Court fails to see how those questions demonstrate that this case is substantially related to the eviction suit. Thus, even if Castelino's motion were not denied because it was not filed in a timely manner, it would be denied on its merits.

---

[6]Castelino concedes that the incident involving the fraternity was not related to his apartment. Dkt. No. 125 at 18 ("[T]he incident has no bearing on [Castelino's] use of his apartment."). Castelino also argues that by "presenting and arguing from th[e] exchange" between Castelino and the fraternity member, Reedy violated Federal Rule of Civil Procedure 11, because there are conflicting versions of what occurred at the fraternity party that Reedy failed to investigate before she questioned Castelino about it at his deposition. *Id.* at 17-18. That argument is nonsensical.

## **CONCLUSION**

For the reasons set forth above, the Court **DENIES** Castelino's motion to disqualify Reedy and her law firm from representing Rose-Hulman in this case.[7]

SO ORDERED: 12/21/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[7] The Court notes that Castelino asks for relief with regard to Rose-Hulman's Exhibit J on page 20 of his reply brief in support of the instant motion. In so doing, Castelino violated Local Rule 7-1(a). If Castelino wishes to be heard on that matter, he should file a separate motion.