UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JUSTIN CASTELINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:17-cv-139-WTL-MJD |
| | ) |
| ROSE-HULMAN INSTITUTE OF TECHNOLOGY, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REGARDING OBJECTIONS TO MAGISTRATE JUDGE'S RULINGS

Plaintiff Justin Castelino has filed objections to several rulings made by the Magistrate Judge assigned to his case. Because each of the Magistrate Judge's rulings at issue was a nondispositive ruling, each is subject to review for clear error. *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014); *see also* Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A) (both establishing standard for reviewing non-dispositive rulings by magistrate judges). Thus, the Court must determine whether any of the rulings were clearly erroneous or contrary to law.

At the outset, the Court notes that the Magistrate Judge's role in addressing motions is to consider the cogent, legally supported arguments presented by the parties and arrive at a ruling. "It is not [the] court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011). To successfully object to a ruling by a Magistrate Judge, the objecting party must be able to point to a cogent, legally supported argument that he made that was disregarded or resolved improperly by the Magistrate Judge and explain how, based on relevant legal authority, the Magistrate Judge's ruling was clearly erroneous or contrary

to law. An objection is not the time to make arguments that could have been made to the Magistrate Judge but were not, or to flesh out arguments that were only hinted at in the briefs before the Magistrate Judge.

**Objection to Order Compelling Production of Social Media (Dkt. No. 141)**

In its initial request for production of documents, Defendant Rose-Hulman Institute of Technology ("Rose-Hulman") sought the following:

> Copies of any diaries, notes, log books, writings, journals, calendars, social media postings, statements to the news media, or other recordings made which may relate to any of the facts or circumstances set out in the Plaintiff's Complaint . . . .

Dkt. No. 67-3 at 2 ("Request No. 6"). Rose-Hulman also requested:

> A copy of each and every communication, whether by email, written correspondence, text message, or other form . . . [t]o any individual, other than Plaintiff's attorney, that relates to the allegations in the Plaintiff's Complaint . . . [and] [f]rom any individual, other than Plaintiff's attorney, that relates to the allegations in the Plaintiff's Complaint.

*Id.* at 3 ("Request No. 8"). Castelino's response to these requests did not include any postings on or communications made via Facebook. After witness Canyu Xu testified during his deposition that Castelino had communicated with Xu about this case, defense counsel pointed out the omission and asked Castelino to supplement the discovery responses to include relevant Facebook communications and postings. In conjunction with its notice of Castelino's deposition, Rose-Hulman requested the following:

> All records, medical records, documents, correspondence, emails, handwritten notes, text messages, calendars, journals, photographs, video, social media posts, or any other documents or items (1) received or reviewed by you; (2) created by you; or (3) in your possession concerning any manner your allegations against [Rose-Hulman] or your claim for damages.

Dkt. No. 67-4 at 3 ("Notice Request").

2

Castelino still had not provided any Facebook information when his deposition began. When asked why by defense counsel, he responded that he "thought we were going to do it in person here." Dkt. No. 67-7 at 3. Using a computer at defense counsel's office during a break in the deposition, Castelino requested a download of his Facebook information from Facebook using Facebook's procedure for making such requests. The next morning, before the deposition was reconvened, Plaintiff's counsel emailed defense counsel twelve emails that he had received from Castelino that consisted of screen shots from Facebook showing photographs of Castelino on the Rose-Hulman campus. Plaintiff's counsel believed those emails were received by Castelino from Facebook in response to his request, but Castelino explained that he had not received a response from Facebook and that he had taken the screenshots from his Facebook "wall" because that was what he had on his Facebook that related to Rose-Hulman.

Counsel then had the following discussion on the record:

Defense counsel: My position at this time, and I made this—I don't know How many times I've said this to you, John, is that I cannot effectively complete his deposition until I have this Facebook download, and at this point I feel like I've only been given portions of it. We know there's more there. I can tell you when you do receive this, this set of documents [from Facebook], John, and I—I want to insist that you are the one that receives them and reviews them and decides what's relevant, not your client and his mother.

Plaintiff's counsel: Duly noted.

Defense counsel: I mean, you agree with that; correct?

Plaintiff's counsel: How do I deal with something that isn't relevant?

Defense counsel: Well, you and I can discuss that. I mean, anything—any communications with any Rose-Hulman students, employees, witnesses, family members—if Justin and his mother are discussing the case on his private Facebook messaging, that's discoverable. I mean, I would prefer that you just produce the entire document, and I reach some sort

3

|  | of agreement with you that I will keep it confidential. Rose-Hulman, Dr. Conwell, no one else will see anything in that document unless it's directly related to Rose-Hulman, and then I will dispose of the document so that none of his private information is shared with anyone else. |
|---|---|
| Plaintiff's counsel: | I think I would prefer that to risking an argument with you about what I deleted and whether it is relevant. |

Dkt. No. 67-10 at 11-13. At the end of the day, defense counsel reiterated on the record that Plaintiff's counsel had agreed to forward the "complete Facebook document on Monday" or "[t]he day that it becomes available from Facebook," to which Plaintiff's counsel replied "Absolutely. No question." *Id.* at 13.

Castelino's position changed, however, and several days later Plaintiff's counsel took the position that Rose-Hulman had "gotten what your subpoena asked for" because the Notice Request used "or," thereby giving Castelino the choice of which categories of items to produce rather than obliging him to produce responsive items in all of the categories listed in the request. Several days after that, on July 19, 2017, the parties discussed the issue with Magistrate Judge Dinsmore during a regularly scheduled telephonic status conference. The Magistrate Judge authorized Rose-Hulman to file a motion to compel regarding the Facebook issue, which it did. Dkt. No. 67. In response, Castelino filed a motion for protective order. Dkt. No. 68. The Magistrate Judge granted Rose-Hulman's motion, denied Castelino's motion, and ordered the following:

> The Court ORDERS Plaintiff to produce the email link to the download of his Facebook data. If Plaintiff is either unable, or unwilling, to provide Defendant with the email link to the Facebook download within **seven days** of the date [sic] this Order, the Court ORDERS Plaintiff to provide his Facebook username and password to a third party vendor, chosen by Defendant to assist in the Facebook download process.

Dkt. No. 137 at 4.

4

As suggested by the Magistrate Judge's ruling, rather than moving to compel responses to its discovery requests, Rose-Hulman had moved to compel Castelino's "entire Facebook download." Dkt. No. 67-1 at 13. The Court understands why this had become Rose-Hulman's position; indeed, the deposition transcript quoted above indicates that *Plaintiff's counsel* had changed the conversation from fulfilling his obligation to cull and produce responsive documents to producing the entire Facebook download and letting defense counsel sort it out.

While Castelino could have objected to this inconsistency between Rose-Hulman's requests and the relief sought in its motion to compel, he did not do so. Rather, in his motion for protective order, Castelino pointed out that the case cited by Rose-Hulman in its motion, *Appler v. Mead Johnson & Co., LLC*, 2015 WL 5615038 (S.D. Ind., Sept. 24, 2015), was decided prior to the 2015 amendment to Federal Rule of Procedure 26(b). That is true. It is also true that the amendment, which added the requirement that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," means that pre-amendment authority must be applied with an eye toward whether the amendment impacts its usefulness in resolving the dispute at hand.

In this case, while Castelino pointed out the language added by the amendment in his motion for protective order, he failed to articulate how the new language should be applied to Rose-Hulman's request for his Facebook download.[1] He argued that Rose-Hulman's request for

---

[1] Castelino did make the following argument:

> Rose-Hulman is on a fishing expedition, and it is using a net so broad it seems calculated to dredge up embarrassments that are either not relevant to the issues raised in the Plaintiff's complaint, not proportional to the needs of the case, or

5

the entire Facebook download was "flawed because it is not limited to a reasonable period of time" and "Defendant has failed to show why all Facebook information going back to 2006 (if Plaintiff even had a Facebook account in 2006) . . . [is] relevant, much less proportional, under Rule 26(b)(1)." Dkt. No. 68-1 at 4. Castelino did not attempt to apply the factors set forth in Rule 26(b)(1) that are relevant to the proportionality analysis, nor did he respond to Rose-Hulman's arguments, set forth in its motion to compel, regarding the relevance of the Facebook information. He also failed to acknowledge that it was his own counsel who had agreed to produce the entire Facebook download and explain why he should not be bound by that agreement.

Castelino offers only a bit more in the way of substantive argument in his objection. He reiterates his argument regarding case law that predates the amendment of Rule 26(b), *see* Dkt. No. 141 at 2 ("We[2] object to this because although the Magistrate Judge alluded to Rule 26(b) proportionality at the top of page 2, his case authority predates the December 1, 2015 amendments to Rule 26."), but again fails to provide any analysis of the factors relevant to the proportionality inquiry that are set out in the amended rule. In any event, given the fact that there is a great deal at stake in this litigation, *see* Dkt. No. 72 ¶ 215 (setting forth the damages

---

> both. The medical authorization its counsel directed to Wabash Valley Psychiatric and insists that Plaintiff sign, see Exh. 2 attached, asks for every conceivable type of record except one, "Confidential HIV Information." Another, attached as Exh. 3, authorizes release of all records generated by Union Medical Group, a health care provider the Plaintiff never consulted. Rose-Hulman's fishing net is overly broad, unduly burdensome, potentially embarrassing, beyond the nees [sic] of the case, proportional or otherwise, and it seeks irrelevant information.

Dkt. No. 68-1 at 3. However, this relates to Rose-Hulman's requests for medical information, not the Facebook download.
    [2]It is unclear to the Court to whom "we" refers throughout Castelino's brief. There is only one plaintiff in this case.

sought by Castelino) and virtually no cost associated with obtaining and forwarding the Facebook download, it does not appear that the request is out of proportion with the needs of the case.

Next, Castelino states "[w]e object because Rose-Hulman received the Facebook data [it] seeks during the depositions of the witnesses to whom Justin referred during his own deposition," Canyu Xu and Mengzehn Lei. *Id.* This is clearly inaccurate, as Rose-Hulman sought far more in its motion to compel (and in its discovery requests) than just Castelino's conversations with these two witnesses.

Next, Castelino states that

> We object because the Magistrate Judge's case authority does not apply to the facts of this case. He relied on Equal Emp't Opportunity Comm'n v. Simply Storage Mgmt., LLC, 270 F.R.D 430, 434-35 (S.D. Ind. 2010) and Rose-Hulman's authority, Appler v. Mead Johnson & Co., LLC, supra, *2, and states correctly that Rose-Hulman wants Justin's Facebook data because his mental and emotional state are key issues in Rose-Hulman's defense. Appler and Simply Storage are inapposite because this was not the issue in either of them.

Dkt. No. 141 at 2-3 (lack of formatting in original). The Magistrate Judge actually cited *Appler* only for the general proposition that "[a] court may compel discovery of social media content if the party seeking disclosure makes a threshold relevance showing." Dkt. No. 137 at 2. A case does not have to be factually analogous in order to properly be cited for a general proposition of law.

With regard to *Simply Storage*, as Castelino notes, the Magistrate Judge quoted it for the proposition that "it is reasonable to expect severe and emotional injury to manifest itself in some SNS [social networking site] content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress." Dkt. No. 137 at 2. Castelino then argues:

> But as our Magistrate Judge also said in a different Order, the litigation's profile has changed since the Motion to Compel that his order enforces, Docket #67. On

7

> September 16, 2017 Justin filed Docket Document 108, in which he withdrew the
> only claim in his Amended Complaint that related in any way to his mental or
> emotional well-being. The discovery compelled by Docket #137 is not relevant to
> any claim.

Dkt. No. 141 at 4. The September 16, 2017, filing is a motion for protective order filed by Castelino. In his brief in support of that motion, Castelino states the following:

> Among the damages listed in the ad damnum clause of his Amended Complaint is this—"h) the total Mr. Castelino will have paid for otherwise unnecessary counseling or therapy, of whatever type;" but he has not and will not pay any costs for therapy and we hereby withdraw that claim.

Dkt. No. 108 at 5. By withdrawing that element of potential damages, Castelino argues, he has eliminated the relevance of his mental condition to his claims in this case.[3] Even assuming that is the case, however, as Castelino notes, what Rose-Hulman argued, and the Magistrate Judge found, is that Castelino's mental and emotional state were "key issues in Rose-Hulman's defense." Dkt. No. 137 at 2.

Castelino argues that any evidence regarding his emotional state also is irrelevant to Rose-Hulman's defense because only information that Rose-Hulman had at the time it made its decision not to allow him to reapply is relevant. This argument ignores the fact that Castelino seeks prospective injunctive relief—that is, he asks the Court to require Rose-Hulman to readmit him as a student. Rose-Hulman's position is that readmitting Castelino would pose a danger to its students and faculty. Regardless of what information Rose-Hulman based its pre-suit decisions on, evidence regarding Castelino's mental and emotional state, especially as it relates

---

[3]The Court notes that the September 16th motion for protective order had not been addressed by the Magistrate Judge before the ruling at issue was made and indeed could not have been, because it had not been fully briefed at the time. Indeed, it only became ripe approximately two weeks ago. Therefore, there is no reason why the Magistrate Judge would have seen the language quoted above prior to making the ruling now under review, as there is no reason why the Magistrate Judge would review a discovery motion before it was ripe.

8

to the Rose-Hulman community, is, at a minimum, relevant to whether an injunction requiring Rose-Hulman to readmit Castelino as a student would be an appropriate remedy. In addition, as the Magistrate Judge noted in his decision, communications that Castelino had via Facebook regarding the events relevant to the allegations in his complaint also are relevant and discoverable. Indeed, as noted above, Rose-Hulman proffered several ways in which the Facebook information is relevant to its defense in this case, and Castelino failed to address those arguments. Given the paucity of Castelino's arguments in his motion for protective order, the Magistrate Judge's decision to permit discovery of Castelino's Facebook information was not clearly erroneous.

Castelino also objects to that part of the Magistrate Judge's ruling that instructs Castelino to provide his username and password to a third-party vendor, chosen by Rose-Hulman, to assist in the download process if he is unable or unwilling to produce a link provided by Facebook as originally contemplated. However, the full extent of Castelino's argument on that issue is as follows:

> We object to this Order because it requires Justin to give access to his Facebook account to an as-yet-unidentified 3rd party whom Rose-Hulman may be able to pay to do whatever Rose-Hulman wants. That is not the way it should be done.
>
>> (T)he extensive use of these sites by many users makes it highly likely that an overbroad discovery order could lead to disclosure of irrelevant or prejudicial content. Discovery orders should be narrowly tailored to ensure only relevant content is produced. Most importantly, trial courts should play an active role in the process by closely monitoring the content of responsive documents and utilizing in camera review to relieve the responding party of the responsibility to determine what content is responsive to the request.
>
> Copyright (c) 2010 Kansas Law Review, Inc.; Evan E. North (emphasis supplied).

Dkt. No. 141 at 1 (quoting Evan E. North, *Facebook Isn't Your Space Anymore: Discovery of Social Networking Websites*, 58 U. Kan. L. Rev. 1279, 1299 (2010)). With all due respect to Mr.

9

North, a second-year law student's view of how discovery should be conducted is hardly compelling authority. But more fundamentally, the suggestion that the Court should conduct an *in camera* review of the documents is simply not relevant to the Magistrate Judge's approval of the use of the third-party vendor; if a vendor becomes necessary, it will be to extract the data from Facebook, not review it for relevancy. Castelino simply has not articulated any reason why the use of a third-party vendor to extract his Facebook information would be improper.

For the reasons set forth above, Castelino's objection to the Magistrate Judge's ruling regarding discovery of Castelino's Facebook data is **OVERRULED**.

## **Objection to Order Denying Motion for Protective Order Regarding Medical Records (Dkt. No. 142)**

In addition to addressing the Facebook data issue in his motion for protective order (Dkt. No. 68), Castelino also sought a protective order regarding Rose-Hulman's request for his medical records. The Magistrate Judge denied that portion of the motion solely on the ground that Plaintiff's counsel failed to comply with Local Rule 37-1, which provides, in relevant part:

> (a) **Required Actions Prior to Court Involvement.** Prior to involving the court in any discovery dispute, including disputes depositions, counsel must confer in a good faith attempt to resolve the dispute. If any such dispute cannot be resolved in this manner, counsel are encouraged to contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of a telephone conference or other proceeding prior to counsel filing a formal discovery motion. . . . .
>
> **(b) Requirements of Motion to Compel.** In the event that the discovery dispute is not resolved at the conference, counsel may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement.

Castelino's motion for protective order did not contain a complete Rule 37-1(b) statement, although it did contain a certification that "[b]y signing this Motion, I certify that, on July 26,

2017, I made a good-faith effort to confer with opposing counsel in order to avoid the Court's involvement in this matter," and the following statement in the brief:

> . . . Plaintiff's counsel e-mailed [defense counsel] the first draft of this Memorandum on July 26 to open the good-faith dialogue required by the Rules before seeking the Court's intervention.
>
> We say that the pending Motion to Compel was Defendant's response was to our good faith overture because its counsel previously gave us until tomorrow, July 28, to produce. See attached Exh. 1.

Dkt. No. 68-1 at 2. Similarly, Castelino states the following in his objection:

> Plaintiff did not attempt to substitute an e-mailed draft for dialogue. Instead,
>
> Plaintiff's counsel e-mailed (Defendant's counsel) the first draft of this Memorandum on July 26 *to open* the good-faith dialogue required by the Rules before seeking the Court's intervention . . . (T)he pending Motion to Compel was Defendant's response to our good faith overture because its counsel previously gave us until tomorrow, July 28, to produce. See attached Exh. 1.
>     Plaintiff's Motion for Protective Order, Docket #68, page 2 (emphasis supplied)[.]
>
>     14. Defense counsel's response to recent communication, attached as Exhibit 5, terminated (the Plaintiff's) good faith attempt to resolve this matter without Court intervention.
>     Plaintiff's 2nd Motion for an Order Compelling Production, Docket #101.
>
> The referenced Exh. 101-1 was printed to .pdf incorrectly and does not show the entire text. We have saved it properly and reproduce it here, as Exhibit 1 to this Objection. The Court will see that Ms. Reedy gave us until July 28 to produce. Exhibit 2 attached hereto verifies that I sent her a copy of my contemplated Motion for Protection to open a good-faith effort to resolve the dispute I anticipated. Rather than participate in Plaintiff's dialogue as required by Rule, Ms. Reedy filed her Motion to Compel on the same day, two days before her stated deadline.
>
> Therefore we object to the portion of the Magistrate Judge's Order that penalizes Plaintiff for failing to conduct a dialogue Rose-Hulman's actions rejected as we began it.

Dkt. No. 142 at 1-2.

The Court has tried in vain to understand how the fact that Rose-Hulman filed a motion to compel regarding the Facebook data issue, which was an issue the parties had discussed with the Magistrate Judge and regarding which the Magistrate Judge had instructed Rose-Hulman to file a motion, is relevant in any way to the parties' good-faith attempt to resolve the medical records issue. To be clear: The motion to compel referenced by Castelino in the quoted language above did not address the medical records issue. Equally baffling is how Dkt. No. 101—a motion to compel filed by Castelino—is in any way relevant to the issue at hand. When Castelino refers to "Exh. 101-1," the Court believes Castelino actually means Dkt. No. 68-2, which is Exhibit 1 to Castelino's motion for protective order and which was, in fact, cut off when it was filed. Unfortunately, Castelino's attempt to "save[] it properly and reproduce it here, as Exhibit 1 to this Objection," failed; Exhibit 1 is an email dated August 25, 2017, that is wholly irrelevant to the instant dispute.

Castelino has not demonstrated that the Magistrate Judge erred in denying his motion for protective order with regard to his medical records on the ground that he did not satisfy Local Rule 37-1. Castelino's objection to that ruling is **OVERRULED**.

**Objection to Order Denying Plaintiff's Second Motion to Compel (Dkt. No. 143)**

In this objection, Castelino raises an issue that already has been addressed by the Court. Specifically, Castelino is unhappy with the Magistrate Judge's ruling that Rose-Hulman does not have to respond to Castelino's discovery requests until Rose-Hulman has completed its portion of Castelino's deposition. Castelino objects to the fact that this ruling was made during a

conference with the Magistrate Judge, rather than in response to a formal motion by Rose-Hulman[4] but, as the Court already has explained:

> Throughout this case, Magistrate Judge Dinsmore has been following the standard practice of this district of attempting to resolve discovery-related issues informally by holding status conferences with counsel before discovery motions are filed. This practice is incorporated into the case management plan in this case under paragraph IV: "If the required conference under Local Rule 37-1 does not resolve discovery issues that may arise, the parties will request a telephonic status conference prior to filing any disputed motion to compel or for a protective order." This requirement is expressly permitted by Federal Rule of Civil Procedure 16(b)(3)(B)(v) (court may "direct that before moving for an order relating to discovery, the movant must request a conference with the court"). In other words, the rules specifically contemplate that issues relating to discovery may be resolved during "a conference with the court" rather than by motion, and, indeed, contemplate that a court might prefer such resolutions where possible. Magistrate Judge Dinsmore did nothing improper when he discussed and resolved discovery-related issues during status conferences with counsel.

Dkt. No. 88 at 2-3. Further, it is frivolous for Castelino to continue to suggest that Rose-Hulman has missed its deadline for serving its discovery responses:

> On June 22, 2017 Rose-Hulman properly filed Docket #40, a Motion for Extension of Time to July 14, 2017 to respond to our pending discovery. The Order granting that motion is Docket #42; it gave Rose-Hulman until July 14, or until 7 days after the deposition was completed if it was rescheduled. This clearly implies that the Court also anticipated a deposition lasting only one day, which is the limit imposed by Rule 26(d)(1). While there is dispute over whether Justin's deposition was completed, it was not rescheduled, and the time the Court allowed to Rose-Hulmans for production passed more than five months ago. Since there has never been a proper Motion for Protection as the FRCP requires, See 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2027 (3d ed.1998), we ask the Court in ruling on this Objection to explain why the Court's Orders at Docket #136 and 137 favor Rose-Hulman.

---

[4]Castelino also references the provision of Federal Rule of Civil Procedure 26(b)(3)(C), which he incorrectly cites as Rule 26(b)(3)(B), that provides that a party is entitled to obtain his own previous statement. Obviously Castelino's outstanding discovery requests seek far more than his own previous statements. Further, this provision relates to the discovery of work product and provides that a party's previous statement may not be withheld from discovery as work product, even if it otherwise would be subject to the work product privilege. The rule is irrelevant to the propriety of the Magistrate Judge's order regarding the timing of Rose-Hulman's document production.

Dkt. No. 143 at 2. As relevant to the instant objection, the Magistrate Judge's "Orders at Docket #136 and 137 favor Rose-Hulman" because the Magistrate Judge consistently has held that Rose-Hulman is not required to serve its discovery requests until seven days after the completion of Castelino's deposition, and Castelino's deposition has not yet been completed. The Magistrate Judge thoroughly explained the basis for his ruling in his ruling (Dkt. No. 136) and Castelino has provided no basis on which the Court could find that ruling clearly erroneous or contrary to law. Accordingly, the objection is **OVERRULED**.

## Objection to Order Compelling Open-Ended Deposition (Dkt. No. 144)

Castelino's deposition in this case already has lasted approximately nine hours,[5] spread over two days. Rose-Hulman requested additional time; Castelino agreed on the record, but then filed a Motion to Terminate or Limit Deposition, arguing that Rose-Hulman was not entitled to any additional time. In response, Rose-Hulman asserted that "Plaintiff was 'uncooperative' during the deposition and routinely stated he did not recall answers to basic questions such as his recent employment history and criminal history [and that] Plaintiff 'often closed his eyes for periods of time and frequently took long pauses before answering questions.'" Dkt. No. 138 at 1 (quoting Dkt. No. 84-1 at 3). The Magistrate Judge denied the motion to terminate, finding:

> Plaintiff asserts he has a documented auditory processing disorder and short term memory problems which impede his ability to answer oral questions. Plaintiff further asserts that he has been diagnosed with low testosterone levels, which cause "stress, fatigue and low energy and exacerbates his disabilities." Plaintiff seeks protection from what he perceives to be the oppressive discovery techniques of Defendant's counsel. However, terminating the deposition is not a reasonable accommodation for Plaintiff's alleged disabilities. Defendant maintains the right

---

[5]Castelino states in his objection that his deposition has produced "more than 10 hours of recorded testimony," and cites to "letter from Renee Dobson, Court Reporter, attached." Dkt. No. 144 at 1. No such letter was submitted as an exhibit by Castelino. Rather, Castelino submitted the transcript of another witness's deposition, which he also filed again a few days later as a free-standing exhibit. That deposition transcript is not cited in Castelino's brief, however, so its relevance to this objection is unclear.

14

to examine Plaintiff on the extensive allegations contained in the 34-page Amended Complaint (and 97 pages of exhibits). As Plaintiff's alleged disabilities "impedes or delays the examination," Rule 30(d)(1) requires that the Court allow additional time for Defendant to fairly examine him.

*Id.* at 2 (docket citations omitted). The Magistrate Judge recognized Castelino's need for accommodation of his disability, however, and ordered the following:

1. The parties shall reconvene Plaintiff's deposition at the earliest mutually agreeable date. The deposition shall continue **day-to-day** at the convenience of counsel's schedules until Defendant has completed its direct deposition examination of Mr. Castelino.

2. During the course of the deposition, the parties shall take as many breaks as Plaintiff requires and shall conclude for the day at such a time Plaintiff feels it is necessary. In addition, Plaintiff may take as long as he needs to answer each question posed and may request that the Court reporter read questions back to him as many times as necessary so that he may understand the question; however, Plaintiff shall not confer with his counsel (other than to address a possible claim of privilege) nor request a break in the deposition while a question is pending. [*See* S.D. Ind. L.R. 30-1(b).]

3. If Plaintiff requires further accommodations, Plaintiff's counsel must file a motion that identifies the specific accommodations requested and must provide medical records to support such request.

Dkt. No. 138 at 3 (emphasis in the original).

Castelino objects to this order, arguing that "Defendant's counsel was not satisfied with the extra day, but this was because of the unreasonable volume of questions she prepared, and had little to do with Justin's disabilities." Dkt. No. 144 at 1. Castelino further argues:

Rule 26(b)(1), cited in Rule 30(d)(1), recites the scope of discovery. It limits the scope of Defendant's discovery to that which is proportional to the needs of the case, considering, among other things, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. We submit that, in order to establish the importance of the discovery in resolving the issues, Rose-Hulman's counsel would need to show the Court all the questions she meant to ask at Justin's open-ended deposition, and that he had the resources to be absent from employment and cover the expense of attending a deposition indefinitely. Because Rose-Hulman operated on the evident assumption that Rule 26 had not been

15

> amended, its counsel has never addressed these issues. Therefore the Magistrate
> has never weighed the evidence presented on them. This would seem to us to
> undermine the basis of the Order at Docket #138.

*Id.* at 1-2. But Castelino did not mention proportionality in his motion to terminate or limit the deposition. Nor has Castelino, in either his original motion or his objection, pointed to any irrelevant line of questioning or otherwise demonstrated that Rose-Hulman's failure to complete the deposition was caused by anything other than what Rose-Hulman alleges—the extra time Castelino requires to consider and respond to questions because of his disabilities.[6] Castelino does accuse defense counsel of "trapping the Plaintiff with questions about [sic] Counsel had just read and stopping only after he told wanted [sic] what she wanted to hear, that his verified complaint was untrue in one particular," which he stated was not "fairly questioning the

---

[6]Castelino quotes the following observation in *O'Toole v. Sears Roebuck & Co.*, 2014 WL 138660 (N.D. Ill. 2014), that "[t]he discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. 'Parties are entitled to a reasonable opportunity to investigate the facts-and no more.' *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D. Ill. 1994) (Moran, J.). . . . One ought not to facilitate attempts by large corporations to grind down individual plaintiffs in cases like this." He then argues: "We submit that the reasoning in O'Toole and Vakharia is sound and they interpret the same Rules of Procedure this court must apply. If this court follows that logic, the Magistrate Judge could not come up with his own resolution to counsel's dispute over the duration of Justin's continued deposition. He could only order the one day to which the parties agreed on the record. See the excerpt from Volume II of Mr. Castelino's transcript attached to this Memorandum. Also see O'Toole at *4. Morever, that one day, or a majority of it, should be devoted to Plaintiff counsel's rehabilitation of Justin's testimony on direct examination. Otherwise there is no due process." Dkt. No. 144 at 3. This is nonsensical. Castelino fails to explain how the "reasoning in" *O'Toole*, when applied to the facts of this case, dictates that "the Magistrate Judge could not come up with his own resolution to counsel's dispute over the duration of Justin's continued deposition. He could only order the one day to which the parties agreed on the record." If what he means is that the general principle he quotes from *O'Toole* should be applied to this case, he is correct; there is nothing remarkable about the principle that "large corporations" should not be permitted to "grind down individual plaintiffs." If Castelino had demonstrated, by citation to deposition excerpts, that defense counsel's questioning of him constituted a "never-ending exploration of every conceivable matter that capture[d her] interest," rather than a reasonable investigation of the facts relevant to this case, then he would have been entitled to a ruling in his favor. He did not even attempt to do so, however.

deponent" in its original motion, Dkt. No. 64 at 4, and compares to a "torturer's technique" in his objection, Dkt. No. 144 at 3. He does not point to anything in the deposition transcript to support this assertion, however. In any case, if Castelino has more that he wants to say about a topic than defense counsel's questioning permits him to say, that can be addressed during his counsel's rehabilitation questioning. Further, if Plaintiff's counsel believes that a particular line of questioning is irrelevant or that defense counsel is using improper tactics when the deposition is reconvened, he may contact the Magistrate Judge to address the issue at that time.

In the absence of any evidence that improper questioning by defense counsel, rather than Castelino's difficulty answering questions as a result of his disability, has necessitated the need for the additional time requested by Rose-Hulman, the Magistrate Judge's ruling was not clearly erroneous. Rose-Hulman is entitled to obtain the same amount of information from Castelino as it would be if he were not disabled. Because it is impossible to predict how much more time Castelino will take to answer Rose-Hulman's remaining questions than a deponent without his disabilities would take, it was not improper for the Magistrate Judge to allow indefinite additional time. Unless and until Castelino can present evidence that defense counsel is abusing the extra time by inquiring into irrelevant areas or otherwise, defense counsel is entitled to continue until her questioning is complete.

### Plaintiff's Desire for an Interlocutory Appeal and Requests for Stays

In each of the objections addressed herein, Castelino asks that the Court "include the words prescribed by 28 U.S. Code §1292(b) so that either party may apply for an interlocutory appeal from that Order." Castelino has not even attempted to demonstrate that it would be appropriate to permit an interlocutory appeal of any of these discovery issues. Accordingly, that request is denied. Also denied are Castelino's motions asking that his

obligation to comply with the Magistrate Judge's rulings be stayed "pending the decision of the 7th Circuit Court of Appeals" (Dkt. Nos. 160 and 166).[7]

## Conclusion

For the reasons set forth above, Castelino's objections set forth in Dkt. Nos. 141, 142, 143, and 144 are **OVERRULED**. Castelino's motions to stay, Dkt. Nos. 160 and 166, are **DENIED**; his motion to stay found at Dkt. No. 159 was mooted by the filing of Dkt. No. 160.

Castelino shall comply with the Magistrate Judge's order regarding his Facebook data, set forth at Dkt. No. 137 at 4, **within seven days of the date of this Entry**. That is, within seven days of the date of this Entry, Castelino shall either (1) produce the email link to the download of his Facebook data or (2) provide his Facebook username and password to a third party vendor chosen by Defendant to assist in the Facebook download process. The parties shall cooperate in scheduling the remainder of Castelino's deposition, which shall be resumed as soon as practicable and which shall be conducted pursuant to the parameters set forth by the Magistrate Judge in Dkt. No. 138. **The failure to comply with this discovery order likely will result in the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37, which could include dismissal of this action.**

SO ORDERED: 3/2/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[7]Castelino's motion to stay found at Dkt. No. 159 was mooted by his filing of an amended motion at Dkt. No. 160.